CARL G. SMITH, PETITIONER FOR
(NOW PLAINTIFF IN) A WRIT OF ERROR
*vs.*
STATE OF MAINE

Knox.    Opinion, September 9, 1950.

314

*Carl G. Smith, pro se.*

*Ralph W. Farris, Attorney General,*
*John S. S. Fessenden, Deputy Attorney General,* for State.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MERRILL, J. On exceptions to the dismissal of a writ of error. The plaintiff in error was convicted of an escape from the Cumberland County jail and sentenced to imprisonment in the state prison for a term of not less than three and one-half years, nor more than seven years. He was sentenced on the tenth day of May, A. D., 1949 and the warrant of commitment issued the same day, since which time the plaintiff has been and now is held in the state prison in execution of said sentence. On the nineteenth of

January, A. D., 1950, writ of error seeking reversal of the judgment and sentence was issued by a Justice of the Superior Court. Hearing was had before said Justice of the Superior Court who, on February 6, A. D., 1950, found no error apparent on the record, dismissed the writ and ordered petitioner to serve original sentence as imposed. Exceptions to this ruling were taken and allowed, and it is upon these exceptions that the case is now before the court.

The assignments of error and the grounds of the exceptions may be summarized as follows: First, that the indictment does not charge the plaintiff in error with the commission of any crime cognizable under any law or statute of the State of Maine; Second, that the indictment does not charge the plaintiff in error with the commission of any offense which would authorize the sentence imposed.

In the recent case of *Smith* v. *State*, 142 Me. 1, 45 Atl. (2nd) 438, 439, we said:

> "Writs of error issue as a matter of course in criminal cases which do not involve offenses punishable by imprisonment for life. R.S. 1944, Chap. 116, Sec. 12. Nissenbaum v. State, 135 Me. 393, 197 A. 915. The issue raised by a writ of error must be determined on the record of the proceedings brought in question. Welch v. State, 120 Me. 294, 113 A. 737. It is the appropriate process for attack against a sentence imposed without authority in law, Galeo v. State 107 Me. 474, 78 A. 867."

See also *Rell* v. *State*, 136 Me. 322, 327.

If error lies to reverse a sentence imposed because it is in excess of that authorized by law, *a fortiori* it lies when the record does not set forth the commission of any crime by the respondent for which any sentence may be imposed. In either case he is attacking the validity of the sentence. As said in *State* v. *Galeo, supra,* which was a case of an excessive sentence upon a plea of guilty:

> "It is not the indictment but the sentence that the plaintiff attacks. He only confessed the allegations

in the indictment. He now raises the question that those allegations did not describe or make out an offense for which the court could lawfully impose sentence of imprisonment for eleven years in the State Prison. We think he is entitled to raise that question after sentence and by writ of error."

Any escape by a prisoner from lawful custody was an offense at common law. Except in those cases expressly provided for by statute, and those cases, if any, excluded by necessary implication by the terms of some statute, escapes which were crimes at the common law, are now common law crimes in this state. No penalty, however, is provided for common law criminal escapes as such. Except for escapes defined by statute and for which statutory penalties are provided, the punishment for criminal escapes is governed by the provisions of R. S., Chap. 136, Sec. 2, which provides:

"When no punishment is provided by statute, a person convicted of an offense shall be punished by a fine of not more than $500, or by imprisonment for less than 1 year."

The indictment upon which the plaintiff in error was sentenced, he having pleaded guilty thereto, omitting caption and signatures, is as follows:

"THE GRAND JURORS FOR SAID STATE upon their oath present that CARL G. SMITH, whose full, true and correct name is to your Grand Jurors unknown, of Gary, State of Indiana, on the fifth day of April, A. D. 1949, at Portland in the County of Cumberland and State of Maine, while being then and there lawfully detained in the Cumberland County Jail, having been theretofore, to wit, on the third day of March, A.D. 1949, committed thereto for want of bail for his personal appearance at the Superior Court to be holden at Portland in said County of Cumberland on the first Tuesday of May, A.D. 1949, then and there to answer to a felony, to wit to answer to a charge of Breaking, Entering and Larceny of property having a value of more than One Hundred Dollars, and while being then and there in the lawful custody of the

Sheriff of Cumberland County, and being then and there in custody in said Cumberland County Jail, at said Portland, did then and there break and escape from said custody and confinement, against the peace of said State, and contrary to the form of the statute in such case made and provided."

The plaintiff in error contends that this indictment does not sufficiently charge him with the commission of any offense either under the statutes of this state or at common law, and that therefore the sentence imposed was unauthorized. He further contends that even if it does charge him with an offense, the punishment inflicted is in excess of that provided by law therefor, and that the sentence imposed is void and must be vacated.

The only statutory provision relative to escapes that might be applicable is R. S., Chap. 122, Sec. 28, which is as follows:

**"Escapes from jail; penalty.** Whoever, being lawfully detained for any criminal offense in any jail or other place of confinement, except the state prison, breaks or escapes therefrom, or forcibly attempts to do so, shall be punished, if such prisoner was in custody for a felony, by imprisonment for not less than 1 year, nor more than 7 years; and if for any other offense, by imprisonment for not more than 11 months; such imprisonment shall commence after the completion of any sentence imposed for the crime for which he was then in custody."

Unless the foregoing indictment sufficiently sets forth a violation of this statute, the sentence imposed was excessive, even should the indictment be sufficient to sustain a conviction for common law escape, the maximum penalty for which is imposition of a fine of not more than $500 or imprisonment for less than 1 year.

R. S., Chap. 122, Sec. 28 only applies to escapes by persons "being lawfully detained for any criminal offense." The applicability of this statute to escapes from jail depends

upon two facts; First, the escapee must be *"lawfully detained"* in the jail; Second, the detention must be *"for a criminal offense."* Both of these elements of the crime are traversable facts. Both must be established by the state beyond a reasonable doubt. Both must be sufficiently set forth in the indictment. Unless the allegations of fact set forth in the indictment show the *"lawful detention"* of the escapee, and that the detention was *"for a criminal offense,"* the indictment is fatally defective so far as setting forth a violation of this statute is concerned.

> "Indeed it is an elementary rule of criminal pleading that every fact or circumstance which is a necessary ingredient in a prima facie case of guilt must be set out in the indictment." *State v. Doran,* 99 Me. 329, 332.

It is to be noted that of these two elements of the statutory offense the first, "lawful detention" is also an element of common law escape. The effect of the statute is not the creation of a new and distinct offense. It merely provides a specific penalty for certain common law escapes which are brought within its terms by the other requirements as to the place from which the escape is made and the cause of the detention. It makes certain escapes felonies which were misdemeanors.

One of the essentials of a lawful detention in a jail is that the commitment thereto be made by lawful authority. That is an essential traversable fact which must be established by the state to make out a prima facie case. The indictment charges that the respondent escaped, having been committed to the jail "for want of bail for his personal appearance at the Superior Court" at a named term "then and there to answer to a felony." The indictment fails to show upon its face any facts from which the lawfulness of the commitment may be determined. It does not show by whom or by what authority the commitment was made. There is not even a direct allegation that he was *"lawfully"* committed. Although the indictment follows the language of

the statute and alleges the escape "while being then and there lawfully detained in the Cumberland County Jail," this allegation is not sufficient. It sets forth no facts from which the lawfulness of the detention may be determined. Nor is it aided by the allegation with respect to the commitment. That allegation neither alleges its lawfulness nor sets forth any facts from which its lawfulness may be determined. In passing it may be noted that the indictment does not even allege that the detention was by virtue of and under the commitment.

> "An indictment or information against a prisoner for effecting his escape should show the original cause of imprisonment, and by what authority he was delivered into custody—so that the lawfulness of the custody will appear—and that the prisoner did escape and go at large." 7 Ency. Pl. & Prac. 914. See also 2 Chitty's Crim. Law (5th Am. Ed.) 159. 1 Russell on Crimes, 430.

> "The Indictment (for escape) will in detail vary with the form of the offence; and, if statutory, the particular terms of the statute; and with the special facts. But it must contain such a setting out that the custody under which the defendant was held and its lawfulness will appear, on its face showing the escaping or breaking away to be a crime. It may then charge that then and there the defendant, so being in the lawful custody of etc, 'out of, etc, unlawfully did escape'." 2 Bishop New Crim. Procedure, Sec. 943.

Although we have no decision in this state directly passing upon the validity of an indictment for either common law or statutory escape, general principles of criminal pleading heretofore declared by this court are sufficient for the decision of this issue. As the statutory requirement of "lawful detention" is merely declaratory of one of the elements of the common law crime, the facts with respect to detention should be set forth, with sufficient particularity to satisfy common law requirements. Whether or not the detention is lawful is a conclusion of law based upon the facts

of detention. This is equally true both under the statute and at common law. An allegation that the escapee was "lawfully detained," unless sufficient facts are alleged to show the lawfulness of the detention is but the statement of a legal conclusion so far as the lawfulness of the detention is concerned. This applies both to the common law and the statutory offense. As heretofore stated the allegations in this indictment respecting the commitment, upon which the lawfulness of the detention is wholly dependent, neither allege the lawfulness thereof nor do they set forth any facts by which its lawfulness may be conclusively established.

As well said by the Kansas Court in *State* v. *Hollon,* 22 Kan. 580, 584, of an information for a "statutory escape *from lawful custody"*:

> "Of course, the information says the defendant was in 'lawful custody'. But in 'lawful custody' how? This is merely a conclusion of law from the matters and things afterwards alleged in the information."

As we said in *State* v. *Lashus,* 79 Me. 541, 542:

> "The complaint follows the language of the statutory provision (R.S., c. 27, s. 31,) which creates the offence intended to be charged; but such a mode of setting out a violation of a penal or criminal statute is not necessarily sufficient. *State* v. *And. R. R. Co.* 76 Maine, 411; *Com* v. *Pray,* 13 Pick. 359. The law affords to the respondent in a criminal prosecution such a reasonably particular statement of all the essential elements which constitute the intended offence as shall apprise him of the criminal act charged; and to the end, also, that if he again be prosecuted for the same offence he may plead the former conviction or acquittal in bar."

This same doctrine was reiterated in *Moulton* v. *Scully,* 111 Me. 428 at 458 when we said:

> "And it is not sufficient, even, to use the words of the statute unless they contain a reasonably par-

ticular statement of all the essentials which constitute the intended offense."

The Constitution of the State of Maine, Art. 1, Sec. 6 provides:

"In all criminal prosecutions, the accused shall have a right xxxxx

To demand the nature and cause of the accusation, and have a copy thereof."

In *State of Maine* v. *Beckwith,* 135 Me. 423 at 426, we said:

"It is the constitutional right of all persons accused of crime to know without going beyond the record the nature and cause of the accusation and to insist that the facts alleged to constitute a crime shall be stated in the complaint or indictment with that reasonable degree of fullness, certainty and precision requisite to enable them to meet the exact charge against them and to plead any judgment which may be rendered upon it in bar of a subsequent prosecution for the same offense. In criminal prosecutions, the description of the offense in the complaint or indictment must be certain, positive and complete. *State* v. *Strout,* 132 Me., 134, 167 A., 859; *State* v. *Crouse,* 117 Me., 363, 104 A., 525; *State* v. *Mace,* 76 Me., 64; *State* v. *Learned,* 47 Me., 426; *State* v. *Moran,* 40 Me., 129; Const. of Maine, Art. 1, Sec. 6."

These principles of law have been recognized in a long line of cases. See *State* v. *Lashus, supra, State* v. *Doran, supra, Moulton* v. *Scully, supra, State* v. *Hosmer,* 81 Me. 506, *State* v. *Bushey,* 96 Me. 151, and *State* v. *Conant,* 124 Me. 108, and the very recent case *State* v. *Bellmore,* 144 Me. 231, 67 Atl. (2nd) 531.

The foregoing requirements as to the statement of facts in indictments and complaints as set forth in *State of Maine* v. *Beckwith, supra,* and as specifically reaffirmed in *State* v. *Bellmore, supra,* it is to be noted, are for two distinct purposes, (1) to enable the accused to meet the exact charge

against him and (2) to plead any judgment which may be rendered upon it in bar of a subsequent prosecution for the same offense. An essential element of lawful detention is a commitment to the place of detention by lawful authority. An indictment for escape which alleges a lawful detention by virtue of a commitment to jail, but which fails to allege by what authority the commitment is made does not allege the facts constituting the crime "with that reasonable degree of fullness, certainty and precision" which the common law and the Constitution of this State require. It does not enable the party accused to meet the exact charge against him. The lawfulness of the detention is the very gist of the crime of criminal escape, and the commitment by lawful authority is the very essence of the lawfulness of the detention. Well established principles of criminal pleading require that sufficient facts be alleged so that the lawfulness of the detention may be determined from the facts so stated. We are not unaware that there are decisions by courts of other states that in indictments or complaints for statutory escape by one "lawfully detained" or "lawfully imprisoned" a general allegation of "lawful detention" or "lawful imprisonment" in the words of the statute have been held to be sufficient. However, in view of the provisions of the Bill of Rights, Art. I, Sec. 6 of the Constitution of this State, as interpreted by this court in *State* v. *Beckwith, supra,* and the long and unbroken line of authorities hereinbefore cited, and recently reaffirmed in *State* v. *Bellmore, supra,* it is our considered judgment that an indictment for an escape from lawful detention must at least set forth the *court* by which, or the *authority* under which the accused was committed to the place of detention from which it is alleged that he has escaped. Without such a statement in the indictment or complaint the accused is not informed thereby of an essential fact upon which the lawfulness of his detention depends. Whether or not in the case of either common law or statutory escapes, in accord with ancient precedents for common law escapes, the indictment must go fur-

ther and set forth the proceedings of and before the court or other committing authority with sufficient detail so that their lawfulness and regularity may be determined from the indictment we need not, nor do we intimate an opinion. But see Archbold Criminal Pl. & Ev. 5th Am. Ed. 551 et seq., also Davis Criminal Justice, 3rd (Heard's) Ed. 443, Whitehouse and Hill, 96. There is, however, an admonition in *State* v. *Lynch,* 88 Me. 195, which those drafting indictments could well heed: "It is always advisable to follow the forms which have received judicial approval, or which have long been in unquestioned use."

The indictment in this case failing to set forth the court or authority by which the commitment was made clearly fails to show a lawful detention of the plaintiff in error. It does not sufficiently charge a crime either under the statute or at common law. It affords no jurisdiction for the imposition of any sentence. The sentence attacked by plaintiff in error is void.

There is yet another ground upon which the plaintiff's writ must be sustained. As already shown herein, the sentence imposed was in excess of that permitted for common law escape. In order to justify the sentence imposed under the only statute which might be applicable to this case, to wit, R. S., Chap. 122, Sec. 28, *supra,* the indictment must allege a violation thereof. To justify the sentence imposed the indictment must not only set forth with that exactitude demanded by the requirements of criminal pleading the legality of the detention of the plaintiff in error, but in addition thereto it must show upon its face that the detention from which the escape is charged was for a *"criminal offense"* and that the alleged escapee "was in custody *for a felony."*

The indictment contains no direct allegation that the plaintiff in error was detained for a "criminal offense" or that he "was in custody for a felony," nor does it contain any direct allegation that he was in custody "for any other

offense." If, however, the allegations of fact necessarily show upon their face that the plaintiff in error was "detained for a criminal offense" and that he "was in custody for a felony" the indictment would sufficiently charge that he was so detained and so in custody.

As said in *State* v. *Lynch*, 88 Me. 195 at 196-7:

"It is also necessary that the indictment should employ 'so many of the substantial words of the statute as will enable the court to see on what one it is framed; and, beyond this, *it must use all the other words which are essential to a complete description of the offense;* (emphasis ours) or, if the pleader chooses, words which are their equivalents in meaning; or, if again he chooses, words which are more than their equivalents, provided they include the full significations of the statutory words, not otherwise.' Bishop on Criminal Procedure, vol. 1, sec. 612.

In *State* v. *Hussey*, 60 Maine, 410, it is said: 'An indictment should charge an offense in the words of the statute or in language equivalent thereto.' In that case the language used was not equivalent to the statutory words, nor did it have a broader meaning, including the significations of the words of the statute.

We think it is sufficient if the words used in the indictment are more than the equivalent of the words of the statute, 'provided they include the full significations of the statutory words.' "

See also *State* v. *Keen, State* v. *Hutchinson*, 34 Me. 500.

Applying the principles set forth in these decisions to the indictment here under examination, unless the facts set forth therein with respect to the detention of the plaintiff in error are equivalent to an allegation that he was detained for a criminal offense and was in custody for a felony, the indictment is insufficient to set forth a violation of the above statute which would justify the sentence imposed. The allegation that the plaintiff in error was "committed (to jail) for want of bail for his personal appearance" at a

named term of court "to answer to a felony" does not necessarily mean and is not equivalent to allegations that he was "detained for a criminal offense" or that he was "in custody for a felony." The indictment does not even directly allege nor does it necessarily imply that the felony had been actually committed by any one, much less by the plaintiff in error. Under these allegations of fact the defendant might have been committed for want of bail fixed by a magistrate for his appearance before the Superior Court to answer to an indictment for the named felony, which may never have been committed by anyone and which indictment might never be returned by the grand jury. A person in such situation is not even charged with a felony. He is merely ordered to recognize to answer to a charge of felony if the grand jury, which is the charging body, finds an indictment therefor against him. He is neither detained for a criminal offense nor is he in custody for a felony. He is in custody for want of bail.

This interpretation of the statute is borne out by the provision therein with respect to penalty for escapes thereunder:

> "Such imprisonment shall commence after the completion of any sentence imposed for the crime for which he was then in custody."

This provision indicates an intent upon the part of the legislature that the statutory phrases "detained for a criminal offense" and "in custody for felony" mean exactly what in terms they say, to wit, that the escapee must be detained *for* the criminal offense and in custody *for* the felony itself as distinguished from being detained and in custody charged with the criminal offense or charged with the felony. Much less, as here, could it apply to an escape by one who, probable cause to charge him with the commission of a felony having been found, is committed for failure to recognize with sufficient sureties to answer to an indictment charging

him with the commission thereof, should the grand jury see fit to indict him and thereby charge him therewith.

It is a well recognized principle of statutory construction that penal statutes are to be construed strictly, yet the intention of the legislature is to govern and they are not to be construed so strictly as to defeat the intention of the legislature. *State* v. *J. P. Bass Co.*, 104 Me. 288, *State* v. *Cavalluzzi*, 113 Me. 41.

Prior to the enactment of this statute all escapes from jail under the laws in force in this state were but misdemeanors, as the maximum penalty therefor was imprisonment for less than one year. In many felonies the convicted felon could be and was sentenced to a term in jail. This was and now is true of all felonies where the punishment inflicted may be for less than a year. Any crime that *may* be punished by imprisonment for one year or more is a felony under the laws of this state. See R. S., Chap. 132, Sec. 1; R. S., Chap. 136, Sec. 4. It is the punishment that *may* be imposed, not that which *is* imposed, that determines whether or not an offense is a felony or a misdemeanor. *State* v. *Vashon*, 123 Me. 412.

As the statute in question makes some escapes from jail, which prior to its enactment were misdemeanors, felonies, the rule for its interpretation is that which we expressed in *State* v. *Blaisdell*, 118 Me. 13, 14, in the following language:

> "The amendment enlarges the offense from a misdemeanor to a felony and was in force when the act complained of was committed. While the rule requiring strict construction of penal statutes was more rigorously applied in former times, when the number of capital offenses was more than one hundred and sixty, yet the rule still obtains, and is so well recognized that citation of authorities is unnecessary. And the rule is equally well established that 'the degree of strictness applied to the construction of a penal statute depends in great measure upon the severity of the statute.' Endlich on

the Interpretation of Statutes, Sec. 334. As a corollary to this rule it follows that a statute declaring an act to be a felony calls for more strict construction than one which declares an act to be a misdemeanor."

We are not unmindful of the rule that even in penal statutes words in a statute are to be taken in their common and popular sense, unless the context shows the contrary. *State* v. *Blaisdell, supra, State* v. *Cavalluzzi, supra, State* v. *Cumberland Club,* 112 Me. 196.

While in a colloquial sense it may be said that one who is arrested on a charge of crime is arrested for a criminal offense and that one who is detained in jail to await trial for a criminal offense with which he is charged, or to answer to an indictment for a criminal offense if the same may be returned against him, is detained for a criminal offense, he is not in fact detained in jail *for the criminal offense* nor is he in fact in custody *for the crime.* In view of the fact that this statute categorically provides that the sentence for its violation shall commence "after completion of any sentence imposed for the crime for which he was then in custody," and in view of the fact that the statute provides for a maximum penalty of imprisonment for a term of seven years, thus changing a common law crime from a misdemeanor to a felony, we believe that the purpose of the act was to provide for the punishment of those who, having been convicted of crime, escape from jail or other place of detention, except the state prison, either before or after sentence. Had the legislature intended to include within the terms of the statute those charged with the commission of crime, or those committed in default of bail to await action by the grand jury, it could easily have employed apt language therefor.

The statute under which the plaintiff in error was sentenced does not apply to an escape of the character (defectively) set forth in the indictment. This statute is the only statute under which a sentence of the magnitude imposed upon the plaintiff in error could be justified. Even

did the indictment sufficiently set forth an unlawful escape of the kind (defectively) set forth therein it would be but a common law escape and only a misdemeanor and the only sentence which could be imposed therefor would be for less than one year. However, as the indictment does not sufficiently set forth the commission of any offense either under the statutes of this state or at common law, the sentence imposed is entirely without legal justification and is void. The writ of error should have been sustained, the conviction reversed and the sentence vacated. Upon the vacation of said sentence, the prisoner, unless held upon some process in no way dependent upon said conviction or sentence, should have been discharged. The exceptions must be sustained.

*Exceptions sustained.*